Madeline NORRIS, Plaintiff–Appellee,

v.

HARTMARX SPECIALTY STORES, INC., Defendant–Appellant.

No. 90–1038
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1990.

Renita Reynolds, Chicago, Ill., for defendant-appellant.

Marvin Menaker, Menaker & Huffman, Dallas, Tex., for plaintiff-appellee.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Hartmarx Specialty Stores, Inc. appeals a judgment awarding Madeline Norris actual damages and attorneys' fees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). Norris now seeks an award for the additional attorneys' fees incurred on appeal. We affirm the district court's award of actual damages. We remand the case to the district court, however, to give reasons for its award of attorneys' fees.

Three black women, Madeline Norris, Patricia Woods, and Gayla Jackson, had been managers in the Dallas branch of Hartmarx, a chain of specialty clothing stores. Claiming racial discrimination, they sued Hartmarx after they were discharged as

part of a reduction in the work force. During the same reduction, Hartmarx terminated the employment of several other black and white employees. Hartmarx filled the positions of Norris and Woods with white employees but abolished the position of Jackson.

The case was bifurcated for trial and the district court heard only the liability issue. In its findings of fact and conclusions of law, the court first considered whether a pattern or practice of discrimination existed at Hartmarx. The court analyzed the claim under the disparate-impact theory, which applies to "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). It concluded that the plaintiffs had failed to establish by a preponderance of the evidence that a pattern or practice of discrimination existed.

The district court next considered the three plaintiffs' employment discrimination claims under the *McDonnell Douglas* standard. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It concluded that Jackson could not prevail under that standard because she could not prove an essential element of her prima facie case—that her employer had filled her position with a nonminority employee.

The court also determined that Woods could not prevail under that standard. In the judge's opinion, Woods had established a prima facie case. Hartmarx, however, had produced a legitimate, nondiscriminatory, and nonpretextual reason for its decision to terminate her employment.

Finally, the district court ruled in favor of Norris under the *McDonnell Douglas* standard. It determined that Norris had established a prima facie case of employment discrimination and that the reason Hartmarx advanced for terminating her employment was a pretext for discrimination.

The district court postponed determining the damages recoverable by Norris so that the parties could attempt to reach an agreement on that issue. The parties later stipulated that the proper amount of damages due to Norris was $7,485 and that the total amount of attorneys' fees incurred by the three plaintiffs was $22,436. Hartmarx, however, contended that the opposing attorneys, who represented all three plaintiffs, were not entitled to recover the total amount of attorneys' fees.

The district court entered a final judgment ordering Hartmarx to pay damages of $7,485 and attorneys' fees of $17,948.80, an amount equal to eighty percent of all attorneys' fees incurred by the three plaintiffs.

*Title VII Claim*

In Title VII cases, the law to be applied is well established. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207; *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The same general standard applies both to refusal-to-hire cases and to discharge cases. *See Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir.1979). In a discharge case, the plaintiff must prove a prima facie case of discrimination by showing (1) that she is a member of a protected group; (2) that she was qualified for the job she held; (3) that she was discharged; and (4) that after her discharge, her employer filled the position with a person who is not a member of the protected group. *Id.; see Burdine*, 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

If the plaintiff establishes a prima facie case, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. The burden of production then shifts to the employer, who must articulate a legitimate, nondiscriminatory reason for the discharge. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at

1824; *Adams v. Reed,* 567 F.2d 1283, 1285 (5th Cir.1978).

If the employer satisfies this burden of production, the presumption of discrimination disappears. *McDaniel v. Temple Indep. School Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). Then the plaintiff must prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext and not the true reason for the discharge. *Id.* The plaintiff can satisfy this burden either by persuading the court that the employer probably discharged the plaintiff for a discriminatory reason or by showing that the employer's proffered reason is unworthy of credence. *Id.*

"Because a finding of intentional discrimination is a finding of fact, the standard governing appellate review of a district court's finding of discrimination is that set forth in Federal Rule of Civil Procedure 52(a): 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' " *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). If the district court's findings are plausible in light of the record viewed in its entirety, we must accept them, even though we might have weighed the evidence differently if we had been sitting as a trier of fact. *Id.* at 573–74, 105 S.Ct. at 1511; *Oil, Chemical & Atomic Workers Int'l Union, Local No. 4–16000 v. Ethyl Corp.,* 703 F.2d 933, 935 (5th Cir.1983).

■ Norris proved her prima facie case of discrimination. The evidence established that Norris is black, that she was qualified for her job, that her employer discharged her, and that her employer replaced her with a white woman. Hartmarx does not suggest that any of these findings of fact is clearly erroneous.

Hartmarx met its burden of production by providing a nondiscriminatory reason for discharging Norris. Hartmarx explained that in considering which managers to discharge during the reduction in its work force, it decided to discharge Norris because of her tendency to criticize other people. According to Hartmarx, this tendency prevented her from achieving management's goals of building morale and promoting team spirit among employees.

Based on the findings that follow, the district court concluded that Hartmarx's articulated reasons for discharging Norris were pretextual. The testimony concerning Norris's tendency to criticize was controverted. Norris had a business degree and over ten years' experience in fields related to customer service. Before her discharge, Norris had received consistently good performance ratings and two merit raises. The department under her management had improved. The only negative ratings that Norris received were part of her last evaluation before the discharge—an evaluation that Norris never saw. After Hartmarx management decided to discharge Norris, it pressured Norris's supervisor to lower those ratings.

Hartmarx replaced Norris with a white woman who had a high school diploma and only six weeks' experience in customer service. This employee had received low ratings in interpersonal skills and was later discharged because of her weakness in this area.

Norris wrote to Hartmarx after the discharge and asked to be considered for any job opening. The company's antidiscrimination policy provides for recalls of employees after reductions in the work force, and at the time of the discharge, Hartmarx had classified Norris as eligible for such a recall. Nevertheless, Hartmarx failed to respond to her request, even though positions for which Norris was qualified had opened.

Hartmarx now contends that the district court based its conclusion of pretext on its view that Hartmarx failed to exercise reasonable and prudent business judgment. We believe, however, that Hartmarx has misconceived the basis of the district court's conclusion.

"The fact that a court may think that the employer misjudged the qualifications of the [employees] does not in itself expose

[the employer] to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097 (citing *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979)). The district court did consider Norris's excellent qualifications and the lack of qualifications of her replacement. It did evaluate the conflicting testimony about Norris's tendencies to criticize others.

The court, however, also considered evidence unrelated to Norris's qualifications. For instance, the court weighed the evidence that Hartmarx later attempted to justify Norris's dismissal by lowering her performance ratings. In addition, the court considered the evidence that Hartmarx failed to recall Norris, even though Norris sought recall and, under its antidiscrimination policy, was eligible for recall. The court evaluated the record as a whole not to assess whether Hartmarx made a valid business judgment but to determine whether Hartmarx's articulated reasons were pretexts for discrimination.

"Determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 641 (5th Cir.1985). The district court's findings on the comparative qualifications and performance reviews of employees, on Hartmarx's attempts to justify Norris's dismissal, and on Hartmarx's refusal to consider recalling Norris support the inference that Norris was discharged because of her race. Accordingly, we hold that the district court's factual findings are plausible and that the court did not err in granting Norris relief under Title VII.

*Attorneys' Fees in the Trial Court*

■ A district court may award reasonable attorneys' fees to "prevailing parties" in an action to enforce provisions of the federal civil rights laws. Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982); *Hensley v. Ecker-*

*hart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).

The determination of reasonable attorneys' fees is left to the sound discretion of the trial court. *Claiborne v. Illinois Central R.R.,* 583 F.2d 143, 155 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979); *Johnson,* 488 F.2d at 716–17. We must judge the reasonableness of the award by the abuse-of-discretion standard of review. *Claiborne,* 583 F.2d at 155; *Johnson,* 488 F.2d at 717. To make this judgment, however, we must carefully review the reasons for the district court's decision. *Johnson,* 488 F.2d at 717.

In several cases this Court has remanded and required the district court to articulate reasons for its judgment awarding attorneys' fees. *See, e.g., Black Ass'n of New Orleans Firefighters v. City of New Orleans,* 911 F.2d 1063, 1066 (5th Cir.1990); *Batson v. Neal Spelce Assocs., Inc.,* 765 F.2d 511, 517 (5th Cir.1985); *Johnson,* 488 F.2d at 717–20. Unless the court provides this basis for our review, meaningful assessment is impossible.

In the present case, the parties stipulated the total amount of attorneys' fees incurred by the three plaintiffs at trial. The district court ordered Hartmarx to pay Norris eighty percent of that amount but failed to explain the basis of its conclusion. Hartmarx now contends that the district court abused its discretion. Since only one of the three plaintiffs prevailed in the trial court, Hartmarx argues, Norris's attorneys are not entitled to recover for time spent pursuing the distinctly different claims of the other two plaintiffs.

We remand this case to the district court to give reasons for awarding Norris eighty percent of the total amount of fees incurred in the trial court. In giving these reasons, the court should take into account any relevant factors among the twelve factors established in *Johnson,* 488 F.2d at 717–20. *See Davis v. Fletcher,* 598 F.2d 469, 470–71 (5th Cir.1979). The court should also consider the general guidelines provided by the Supreme Court in *Blum*

and *Hensley. See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley,* 461 U.S. 424, 103 S.Ct. 1933.

Time expended on claims that are factually and legally related may be difficult to apportion on a claim-by-claim basis. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. A court should not, of course, reduce a fee award merely because the plaintiff failed to prevail on every contention in the lawsuit. *Id.* at 435, 103 S.Ct. at 1940. But "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award." *Id.* at 440, 103 S.Ct. at 1943.

In the present case, Norris should be allowed to recover for time spent on her successful claim as well as for time spent on other issues and claims if that time contributed to her ultimate success in the case. No attorneys' fees should be assessed against the defendant, however, for any legal work undertaken solely to develop the discrete claims and issues of the two unsuccessful plaintiffs. *See Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943.

*Attorneys' Fees on Appeal*

A long and consistent line of Fifth Circuit precedent allows awards of attorneys' fees for both trial and appellate work. *See, e.g., Marks v. Prattco,* 633 F.2d 1122 at 1125–26 (5th Cir.1981) (remanding and instructing the district court to fix the amount of fees incurred during the entire course of litigation, including two appeals); *Morrow v. Dillard,* 580 F.2d 1284, 1300–01 (5th Cir.1978) (holding that prevailing party in civil rights action is entitled to fees for appellate as well as trial work); *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 358–59 (5th Cir.1977) (awarding fees for pretrial, trial, and appellate work in a Title VII case), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). In keeping with these cases, we award Norris attorneys' fees for appeal and we remand to allow the district court to determine the amount of attorneys' fees to be granted to Norris for appellate work.

The judgment is AFFIRMED in part and REMANDED in part for proceedings in accordance with this opinion.